Our final case of the day, Rita Killen-Batt v. Atty Gen May it please the court, my name is Valerie Birch and I represent the petitioner Rita Killen-Batt and I'd like to reserve four minutes for rebuttal. The Board of Immigration Appeals made two legal errors in this case. It applied the wrong definition of acquiescence and it applied the wrong standard of review to the immigration judge's factual findings. Under the Board's definition of acquiescence, country conditions evidence is alone insufficient to support a finding of acquiescence. This court has held otherwise. It has held that country conditions alone can support a finding and that was in P.S. Chacon-Villegas and citing Zubeda v. Ashcroft. Why doesn't green control, as respondents suggest here, as to our jurisdiction? Aren't you asking us to just re-weigh evidence? No, Your Honor. Is that your question? No, Your Honor. We're not asking you to re-weigh evidence at all. The evidence is not in question here. The facts are not in question here. In green, the petitioner asked this court to re-weigh evidence and that would be impermissible because this court cannot review matters of fact. But here we are simply asking the court to consider that the Board of Immigration Appeals applied the wrong standard. Which is clearly a legal question. It is clearly a legal question. Acquiescence is clearly what happened here. The Board says it reviewed the immigration judge's decision under the clearly run-as-standard but that is not actually what it did. So what did the I.J. find here was more likely than not to happen to Mrs. Batt if she was returned to India? The immigration judge found that Mrs. Batt is more likely than not to be physically harmed in the same way that she was in the past by her family. She was physically detained by her family for one week and beaten so badly that she had to seek medical attention. She fears that that will happen again and the immigration judge credited her with that. And consistently found that the Indian government has failed to act on several areas of concern. So the I.J. considered the practicalities of what is being done. Right. Whereas the BIA actually focused on whether they, their specific act, whether they knew that this had occurred. And also talked about some efforts. Constitutional guarantee and the Supreme Court has instructed governments to root out honor killings. Isn't the real problem here that the BIA didn't look at the likelihood of what was going to happen here? And they felt acquiescence was in the kind of the good intentions, if you will. Whereas we have, we have case law that says, you know, the opposition of the government isn't key. It's what, it's what actually is going to happen. I think it's a P.H. Convillegas. The government opposition to the conduct isn't what we look at when we think about acquiescence. We look at what has the government done to prevent this? Exactly. Your Honor, that's exactly the point that I, I would say as well. The Board of Immigration Appeals ignored this court's precedent in P.S. Chacon, Gomez, Zuluanga, and also in Silva-Rendifo where this court has clearly said that the, the CAT applicant needn't show that a particular official in the government would harm him or her. And willful blindness is sufficient, correct? Yes, and not only that, but the, that the government need only be. What do we know about willful blindness in this case? Well, what we know is country conditions based, because it is true. Big country. Yes, it is. It is a very big country. Largest democracy in the world. It is a very big country, but one thing that is very clear from all of the country conditions reports, and the government does not dispute this, is that women are treated miserably. Domestic violence issues are not a concern of the police. They, they do not protect women. Everywhere throughout that large country? Everywhere. We also know there have been legislative steps taken in the direction of at least improving the situation, if not attempting to minimize domestic violence. High-level, high-level people in the Indian government have said that low, low-level officials should root out honor killings and the, the mistreatment and the beatings of women. But honor killings is not what happened here. Well, it's the same type of mentality that prompted my client's family to beat and detain her. The caste system. And she isn't risen for that. The caste system. Yes, she married well outside of her caste and that is completely unacceptable. Well, it's her own brother, right? Her own brother. Absolutely. But that's the way the culture works there. And it's simply not something that we got into discussing in our briefs because it's very, it's been accepted by the government and the immigration judges, not been a thing that's challenged. The country conditions clearly show that that is how women are treated. It is a dishonor to the family to marry outside of the caste and that's exactly what she did. Women are killed for that. But if you're asking us to, to find likelihood of torture with government acquiescence, not with evidence of acquiescence specifically as to this applicant, but based on country conditions, isn't that a sort of categorical rule for women generally seeking relief under CAT based on the country condition reports? No, Your Honor, each woman would have to present the country conditions evidence showing that the type of situation that she fears is similar to her situation. Well, she never reported this to the police. That's correct. She never reported this at any time to police. She didn't report the episode that she experienced found, as a matter of fact, by the IJ after it happened, nor is there anything in the record to suggest that there was a report to law enforcement about her brother's efforts to find either her or her husband subsequent. Law enforcement was never given an opportunity to do anything. Instead, the record shows, does it not, that she relied entirely on her own belief. One might say opinion that law enforcement then and there where she lived would do nothing in response to a complaint from her. Her decision not to attempt to seek assistance from the police was reasonable because they simply don't help women like her. How do we know she knew that? She testified to that. She said, I didn't go to the police because I'm too poor to pay a bribe. They wouldn't help me because I'm too poor. That's just how it works in India. Why isn't that just her opinion? Why isn't that just speculation? Because the country conditions back it up 100%. You're also trying to point us to the credibility findings of the IJ as to the reason that she didn't report, which is something that is not addressed in the BIA's opinion either. That's correct, and the credibility of my client is not at issue in this case. The board did not say that she was incredible. In fact, on two occasions, the IJ upheld her credibility. Yes, that's right. In its opinion, the Board of Immigration Appeals did not apply the clearly erroneous standard because whenever you do a review under the clearly erroneous standard, you have to point out facts that you thought the immigration judge decided wrong. That's what the board must do. It didn't point out a single fact that was wrong. All it did was say the wrong standards, that the country conditions alone essentially, its conclusion was that they can't support a finding of acquiescence, that because she didn't report to a government official, how could the board conclude that the immigration judge's legal determination was correct? Those are legal decisions. The board did not engage in a clearly erroneous review. This is completely different from Green because of that. We're not asking anyone to consider these facts we've just been discussing. I mean, I think it's important that this is in the record and it's considered, but it's frankly not an issue in this case. When this came back up to the BIA after remand, the board addressed only the acquiescence issue, right? So the board has not ruled on the question of whether the kind of conduct to which she may be subjected constitutes torture or the likelihood or probability that she would be subjected to that conduct, right? Well, the board did not overturn the immigration judge's finding. No, that's not the question that was asked. The question was asked is, this has been before the board twice, there was not a ruling by the board as to whether or not what was visited upon Ms. Bach the first time constituted torture, nor was there a determination by the board that what likely would happen or the prospect of what would happen would constitute torture. That is correct, isn't it? The board did not specifically say that. That is correct. The board never reached those questions, either. The board never reached those questions. Were they urged before the board? The government argued everything. Basically, they argued that the evidence was weighed incorrectly by the judge, everything. The second time around before the board, the government argued this wasn't torture, and the BIA wouldn't take the bait. But even if we were to agree with you that it applied the wrong, well, we'd have to send it back anyway if it applied the wrong standard. Well, I don't think you do. Under Ventura, because as soon as the court clarifies the standard, the conclusion is obvious. But how about the unresolved issues that were before the board that it really didn't need to reach, but now maybe it does? How many times does the board get to review this case? They had an opportunity to state all of the reasons that they thought this case was not sustainable, that the immigration judge's decision was incorrect. They sent it back once for more findings from the immigration judge. The judge made those findings. It went back up again. Still, they didn't raise these questions that you're raising now. I don't think that we should give them a third chance. My client has been sitting in immigration detention for two and a half years. She has children. She has a husband. Let's be careful where we tread on that. I'm sorry. Your client did hard time for an aggravated assault against her child. She did, but if she was a citizen, she wouldn't be there now. All I'm saying is, Your Honors, that it would be very inefficient to continuously have the board address piecemeal every single possible issue that could be raised in a CAT case. This could go on infinitely. Usually the BIA does tell you what they think about most of the issues that are there. And here they didn't. There's something to be said for that. All right, you've reserved time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Andrew Nsinga on behalf of the Respondent, the Attorney General. Because Petitioner's aggravated assault conviction constitutes an aggravated felony, this Court only has jurisdiction to view culpable legal and constitutional issues. There are no such issues before the Court. Sure there is. There's a legal issue because the board said that the record doesn't indicate any official complicity in the past incident involving her brother, even to the extent of turning a blind eye. The applicant didn't report the incident and thus weren't given an opportunity to respond. So that's clearly against our law that says there's no requirement of reporting specific instances in order for acquiescence. Then it goes on to talk about what the Constitution guarantees and that the Supreme Court has instructed people to root out. And they say these efforts have been met with limited success. It's insufficient to conclude. Totally ignoring the impact of the country conditions as to what is she going to face when she gets back. Isn't that the issue? It's whether or not the government is likely or not to acquiesce. What is she going to face when she gets back? What did the BIA decide relevant to that? It decided that the immigration judge's inference, without any specific evidence in this case, but inference solely based on country conditions, was clearly erroneous. It didn't say that. It said it was clearly erroneous because it would not infer from general background information in this case. But they said the testimony of the country conditions had not proven that they would acquiesce. And then goes on to say why they haven't proven it. And to my mind, what they say there doesn't relate to, okay, what's going to happen to her when she goes back. It's whether or not the Indian government is likely to acquiesce. But it didn't say what it's going to do. It said it guarantees a right to equality regardless of gender. Well, that's fine. We guarantee a right to a lot of things. But that's not to say, you know, guarantee things and that's not to say there weren't, you know, horrible things going on with the Ku Klux Klan and hangings and things of that kind. We have constitutional guarantees. But isn't the issue what's really going to happen? It's what is likely to occur. If this were actually a non-criminal alien, what is likely to occur is a factual determination. Exactly. In fact, we've said as much in Kaplan. Yeah. Now, Kaplan, again, that's with the board's authority, so I don't want to necessarily confuse the issue. That's right. But there's that conflict here of what the facts are with respect to the country conditions. Are there? It's a difficulty. There are no conflicts about discrete historical facts. But what is likely to occur is still a factual determination. The BIA is supposed to be reviewing here for clear error. Yes, Your Honor. Right. The IJ needs specific findings that took into account, for example, the reason that she didn't report as well as the country conditions. Now, the issue before us, I think it's been framed as a question of whether the BIA applied the correct standard of review. That, under Roy and Kaplan, you'd agree, is a legal question. It can be a legal question, but the court has to look to the nature of what's actually being argued. So when Pitcher, for example, says in a brief – But that threshold question, whether they applied, notwithstanding that they said they're applying a clearly erroneous standard, whether they in fact did that is a question of law that we can look at and we have jurisdiction to look at. You're with me so far? It can be. That's why the courts have used the word colorable, because any alien, criminal alien could then circumvent the jurisdictional bar and obtain a lengthy process simply by saying, well, the board misapplied the standard. Now, the argument then boils down to, well, I think the board should have given more weight to this piece of evidence than that piece of evidence. But Pitcher says we misconstrued the meaning, or rather that the board misconstrued the meaning of acquiescence. That's purely legal, isn't it? That would be legal under Kaplan. But, again, Green then comes along and says, well, look, even – I should back up for a second. Kaplan says there's two prongs for the agency. Prong one is factual. What's likely to occur? Prong two is legal. Whether or not what we think is likely to occur will constitute torture. But Green is actually the much more complicated case in this situation, because in Green, one of the allegations there is that the agency did not reach prong one, the likelihood. It just assumed. But there was no disagreement on the facts. The IJ and the BIA in Green were in agreement. The petitioner was not. So the question of whether the clearly erroneous standard applied, it's really kind of a red herring, isn't it? Well, I'm not quite sure, because petitioner has gone in her applied brief and actually asserts it's a legal determination under Kaplan. So the government's a bit at a loss of exactly how it is and is not at the same time legal and factual. It was very factual because whether it would be attributed to the government or not was an issue. In fact, the factual scenario is very similar to this. The Jamaican government in that case is – With facts, would it be attributable to the government? Whether that is likely to occur. Right. And it's a factual finding that it would be attributable or that it would not be attributable. But here we don't have a factual finding like that. In Green, it was purely legal under Kaplan. Subpart B, absolutely. The alleged actual error is the agency didn't even reach the underlying factual, as you just assumed. So the only determination by the agency in Green was prong two. That was the second question. But subpart A of the court's jurisdiction says, well, look. Look at the nature of what she's actually alleging here. These are factual arguments that we would typically review under substantial evidence standard. So when we look at the substance of her claim in petitioner or contender brief, for example, country conditions quite clearly demonstrate that low-level Indian officials would likely ignore a request for protection. That's simply saying to this court, reweigh the evidence. Don't we have a more fundamental problem, though? Because after referencing those country conditions, the evidence in those reports, the BIA says we cannot. We cannot. Not that we consider them and we weigh it differently or we don't make the same inference, but we cannot infer from them that there would be government acquiescence. Our law has said, in fact, you can infer as a legal matter. You can make that inference. How do we know the BIA wasn't concluding it didn't have the authority in the absence of more particularized evidence as to this applicant to make the conclusion about acquiescence on the country reports? You have to look at the overall structure. You can't just look at one word of a decision and take that out and that's somewhat out of the context. Well, then they necessarily said they never could. Because why would the agency then have looked at the different country condition evidence and say, well, there's some evidence that suggests that these things do occur, and they absolutely do occur. But then there's evidence that the Indian government intends to stop it. But they say the country conditions evidence had not proven that a public official and then it turns to evidence which I guess it thinks is more substantial, i.e., she didn't report it, the Constitution has a guarantee, and the Supreme Court has instructed people to root out. That these efforts have been met with limited success is insufficient to conclude that a police officer or other government official likely would turn a blind eye to applicants' torture. Insufficient. Absolutely. If we believe that what the Constitution says and what a Supreme Court urges doesn't really show acquiescence and what's going to happen to her when she, don't we, isn't that a legal matter that we need to say to the BIA? You're looking at the wrong things to determine acquiescence. The IJ, indeed, was correct in looking at what's happening. The court then is simply re-weighing evidence. And then what occurs then is a criminal alien is circumvented the jurisdictional bar to receive de novo review when the average alien would simply receive substantial evidence review. Who re-weighed evidence? The BIA? The court would be re-weighing evidence. The board certainly did re-weigh the evidence, and it's absolutely allowed to. But they didn't say the country conditions were different from what the IJ was. It's just they said it's insufficient. So we're not re-weighing, we're looking at how they reasoned through the matter, aren't we? The immigration judge did exactly what petitioners are doing. There are some people in the government who acquiesce. But ignoring that there are some people who do not. The problem is we don't know in which group she falls. And part of that as a factor is her failure to report to the police. So we have the possibility of being in one of two groups. Petitioner does attempt to create a categorical. Well, this happens often. So I necessarily must fit in a group where the government will acquiesce. It's actually petitioner's argument that sort of creates this categorical. The agency simply, or excuse me, the board is simply looking at the evidence and saying we weigh that evidence differently and we think the immigration judge ignored. He made an inference. How does the BIA's analysis in that portion that was just read by Judge Rendell suggesting that if there's been statements by, you know, sort of an official policy where there's overwhelming evidence that there's still a severe grassroots problem, a very troubling grassroots problem as even the BIA admits, but you've got these official policy statements, that that's insufficient. How do you square that with our holdings in Gomez-Uluaga and Pichacón-Villegas, that acquiescence can be established even when the government is actively working against the prescribed conduct? I think the emphasis there is on the word can. They can establish it. There is no petitioner would like this case to be about the agency saying, oh, you can't. We foreclose a possibility. The agency never said you can't, but we need evidence. You have the burden of proof to show it's a clear probability. Let me take you down a slightly different path, and Judge Krause's question really allows me to segue to this, because as far as I've been able to determine, all of our cases on acquiescence have addressed conduct that rises to the level of torture that is committed by groups, defined groups acting with the acquiescence of a government. The facts of this case, although they involve widespread societal conditions within India, as far as I know, don't identify a group of any kind. In fact, the concern is really with an individual, the brother or at most the family of Ms. Bhatt. Does that matter? Perhaps I'm missing something in our cases, but all of them that I've looked at involve group activity, which rises to the level of torture. I haven't seen a group identified here. Is it all males within India? Is it all people who believe in the caste system? Is it all families with a marriageable child? None of that has been set out in this case. I raise it only because I'm wondering about just what our prior cases mean in terms of willful blindness and acquiescence. If this is the act of an individual as opposed to a recognized group, and an act that has gone unreported to the police. Well, first, certainly merely the fact that it's an individual doesn't mean the government can't acquiesce. The government certainly could acquiesce. I suspect what your questions are getting to is how would it sort of impact the analysis of background evidence. I think an example for example is Zubeda. Zubeda, which said that general background evidence may be sufficient, but made very clear it's not necessarily sufficient. Zubeda dealt with the Democratic Republic of Congo, which at the time was undergoing a massive civil war with armies from six nations. The court said, well, look, we have a massive uprising in this country. When we look at that, that impacts how we think something is more likely than not, because the group is really big. All these people are necessarily doing this. We have mass genocide and rape. So it impacts sort of how we view country conditions. Does it preclude cat protection, the mere fact that it's an individual? No. And the agency never said that, and that would be a fairly ridiculous conclusion. It's only a conclusion that's presented as a straw man argument. To return to one thing about the police report, petitioner again asserts, well, it's a legal error because the board somehow required me to report. No. It's a factor to consider, though. Gomez Uluaga and Valdez say, well, when you report to police and they do something, well, that's indicative of acquiescence. So whether it is it's a positive, that shows something is more likely than not to occur. But when you don't do it, it's not a penalty. We're not penalizing you, but we don't know. There's a gap of evidence that you need to fill as a person with a burden of proof. But how is it that the BIA makes no reference to the other significant part of that equation? And, well, I understand that if you report and there's inaction, you've got some circumstantial evidence of acquiescence you can work with. But here there is a finding, credibility findings are not disturbed. She, the reason that she didn't report was her belief, found credible, that there would not only be inaction, but that it might actually exacerbate the harm to her from reporting because of the country conditions that are otherwise bolstered by these reports. In reviewing for clear error, the BIA is supposed to or required to review on the totality of the record. There's not even reference to her reasoning. How can we conclude that it applied the correct standard of review when that very significant piece of evidence is missing from its own analysis? Well, if I may go over it, Your Honor, to answer the question. Please do. There are sort of two parts to my answer. First is, as a general matter, aliens tend to simply stand up and say, well, I was credible. Ergo, what I say is sufficient. But that's not accurate. As Judge Smith pointed out, everyone can have an opinion. An alien could stand up and then say, Your Honors, Immigration Judge, I have a clear probability I would be tortured with the acquiescence of the government and sit down. Is the Immigration Judge required to find the person not credible and say, well, I appreciate your legal opinion, but it's not sufficient? Of course not. The BIA didn't deconstruct those findings or conclusions or whatever they were, for example, to the extent of determining whether or not what took place was torture or whether what was likely to occur would constitute torture. I mean, that was another way they could have addressed this, resolved it, and did not. Your Honor, aside from the likelihood, which is factual, address the legal nature of whether or not what would occur upon return would be torture. The board may resolve cases before on a single issue, and there's nothing wrong with that. Green specifically says the agency is not required to reach an issue. That doesn't need to do. This court would not be required to reach an issue. That doesn't need to. And there's nothing wrong with that. In terms of going back and forth, well, that is sort of the nature of judicial review. How many bites of the apple does the board get? Congress doesn't limit the board's authority. The board's authority is the board's authority because it is representing the Attorney General. Congress gave the Attorney General the authority to make these decisions. And with regards to the police report about deconstructing it, her explanation for why she didn't report it, that's fine. There's no problem with that. She doesn't have to report it. But if she doesn't report it, we don't know. We have no specific evidence how the police would respond. So it's fine. She can rely on general country conditions. But whether or not it is she meets her burden is ultimately a question of fact. This court simply doesn't have jurisdiction to review. And she does not give more review as a criminal alien by simply presenting a substantial evidence issue to this court and then say, give me de novo review. That would be contrary to Congress' intent. So we would ask the court to dismiss the petition. Thank you very much. Rebuttal? Your Honors, I will waive rebuttal unless you have any questions. I don't have anything to add. No. Thank you. Thank you very much. The case is now argued. We'll take it under advisement. I ask the clerk to recess for it. Thank you, guys.